IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN PATELLA, a sole proprietor doing business as "LittleJohn's" and doing business as "Platinum;" TERRY SMITH KING, a sole proprietor doing business as "Roosters;" and JONATHAN MAURICE BROWN, a sole proprietor doing business as "Big Time Barbershop; on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>vs.<br><br>PEOPLE'S REPUBLIC OF CHINA;<br>THE COMMUNIST PARTY OF CHINA; and<br>WUHAN INSTITUTE OF VIROLOGY,<br><br>           Defendants. | 1:20-cv-433 |

**AMENDED AND RESTATED**
**MOTION TO EFFECT SERVICE THROUGH DIPLOMATIC CHANNELS**
(*Rule 4, Federal Rules of Civil Procedure; 22 C.F.R. §§ 93.1 and 93.2*)

COME NOW PLAINTIFFS, by and through their Undersigned Attorney of Record, pursuant to the provisions of Rule 4 of the Federal Rules of Civil Procedure, and Title 28 of the United States Code, and they respectfully pray that the court enter an order directing the Clerk of the United States District Court for the Middle District of North Carolina to effect service of process herein upon Defendant Peoples Republic of China via diplomatic channels utilizing the offices of the United States Department of State.

Plaintiffs respectfully contend that such specific authorization is required by the regulations of the United States Department of State, 22 C.F.R. §§ 93.1 and 93.2, and that the same would not be precluded by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602.

In support of such motion, Plaintiffs respectfully show unto the court that:

Page 1 of 6

1. Plaintiffs have obtained a complete and accurate translation into simplified Chinese of all documents required for service upon Defendants under The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which entered into force in the United States in 1964.

2. Plaintiffs submit to the court that clearing this translation hurdle was a long and arduous task. Without edits or modifications, the transcription alone cost $3,500.00, somewhat more than was originally projected. However, cost alone was not the most serious obstacle to complying with the terms of The Hague Convention. It proved to be difficult to find an individual who was qualified to translate the documents required for effective service into simplified Chinese and who was also willing to sign a verification attesting to the accuracy of the translation. Plaintiffs' attorneys contacted numerous professionals, such as doctors, lawyers, and university professors, all of whom had the knowledge and ability to perform the required translation. However, none of these professionals were willing to do so because they stated that they had families in China and that they were afraid because of the likelihood of reprisals and repercussions for their family members who still lived in China if they were to perform the translation and sign their name to the verification. Plaintiffs sought assistance from Wake Forest University, other institutions of higher education, medical centers, and the business community.

3. Ultimately, a qualified translator was located in Taiwan who was willing to perform the translation and to execute the necessary verification. The translator employed by Plaintiffs has put themselves, as well as their family, at serious risk for retaliation if China's aggressive conduct toward Taiwan culminates in seizing the island by force. China has consistently demonstrated that families of diplomats, businessmen, and students who are living abroad will be held accountable for the conduct and speech of such individuals. Through public

Page 2 of 6

Case 1:20-cv-00433-TDS-JEP    Document 35    Filed 03/10/26    Page 2 of 6

pronouncements, diplomatic communications, and aggressive conduct toward other countries, China has demonstrated that it considers itself to be the sole arbiter of what its responsibilities as a country entail. China has made it abundantly clear that it does not and will not conform to international norms of conduct whether they pertain to the use of force, recognition of the sovereignty of other states, or customary commercial behavior. International law, as embodied in The Hague Convention and other recognized treaties and precedents, has established a comprehensive body of expectations and requirements concerning the behavior of a countries in their relationships with other countries. China has elected to ignore the tenets of The Hague Convention, as well as those of numerous other agreements, is a well-coordinated and comprehensive effort to shield itself from being held accountable for its conduct on the international stage. For example, while Taiwan has existed as a sovereign and self-governing entity since 1949, China has begun to engage in a continued pattern of commercial and military harassment designed to gain control over the island and its people by the deliberate application of diplomatic, economic, and military force without regard to the expressed desire of the Taiwanese people that they live in peace and harmony as an independent state.

4. China has consciously and purposefully arrogated unto itself the authority to deny and ignore the customary dictates of international law, including the fundamental expectation that sovereign states will cooperate with one another and that disputes will be resolved by negotiation and resort to established institutions of adjudication. China's consistent response to the multitude of claims and questions concerning the origins of COVID-19 has been to deflect questions and to mislead scientific inquiries conducted by respected and neutral organizations.

5. By this motion, Plaintiffs merely seek to obtain the assistance of the Department of State in performing one of the tasks with which it is charged: interfacing with a foreign government on behalf of American citizens.

6. Plaintiffs have retained the services of Crowe Foreign Services of Portland, Oregon, for the purpose of effecting service of process upon Defendant People's Republic of China through diplomatic channels in accord with the provisions of The Hague Convention and the requirements of Title 28 of the United States Code. Crowe Foreign Services has substantial experience in serving legal documents in multiple foreign countries, including the People's Republic of China. Crowe Foreign Services is presently ready, willing, and able to effect proper service of process upon Defendant People's Republic of China in accord with the Hague Convention and Title 28 of the United States Code upon entry of an Order from this court as is presently required by the governing regulations of United States Department of State

7. Plaintiffs further submit that they have paid $2,725.00 to Crowe Foreign Services for fees charged by the State Department to effect service upon Defendant People's Republic of China through diplomatic means.

8. As of the filing date of this motion, Plaintiffs have spent the following amounts in order to comply with the Hague Convention and serve the Defendants:

   A. Translation: $3,500.00

   B. Service (Crowe): $2,500.00

   C. State Dept: $2,725.00

   Total: $8,725.00

9. Plaintiffs submit that the foregoing issues regarding obtaining a translation of the Complaint, and of effecting service of process with reasonable dispatch and without delay,

would not have arisen if the Defendants were any other Hague Convention signatory or nation. In particular, Plaintiffs are informed that the People's Republic of China, its agencies, and the Chinese Communist Party are engaging in a systematic and ongoing effort to evade and obstructively shield themselves and the Co-Defendants, from service of process in accordance with The Hague Convention in order to prevent the adjudication and consideration of lawful remedies on behalf of those who have alleged damages.

10. Crowe Foreign Services, which has considerable experience in effecting service under the Hague Convention, attempted to serve all three defendants in a manner consistent with the Hague Convention, but all three defendants refused to accept service without explanation or justification of any kind. Plaintiffs state, upon information and belief, that Defendants are in actual possession of all translated documents, including the summons and Complaint.

11. The United States Department of State requires, under 22 C.F.R. §§ 93.1 and 93.2, that it will not undertake service upon a foreign nation without authorization from the court in which the action is pending. This authorization is a regulatory prerequisite for obtaining the assistance of the Department of State in an action such as the case at bar. This diplomatic service is not precluded by The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et. seq.*, does not preclude diplomatic service of process, nor does it bar the Department of State from providing this procedural accommodation to American citizens.

The United States District Court for the Eastern District of Missouri has previously entered an order granting the relief which Plaintiffs seek herein, and such court ultimately entered a default judgment against the People's Republic of China. *State of Missouri, ex rel. Bailey v. The People's Republic of China* (1:20-CV-00099 SNLJ). A copy of the Memorandum of Judgment in such case has been previously filed with this court.

WHEREFORE, Plaintiffs respectfully pray the court that an order be entered directing the Clerk of the United States District Court for the Middle District of North Carolina to effect service of process herein upon Defendant Peoples Republic of China via diplomatic channels utilizing the offices of the United States Department of State pursuant to the provisions of 22 C.F.R. §§ 93.1 and 93.2 (2023).

Respectfully submitted, this 10th day of March 2026.


/s/ JAMES BARRETT WILSON, JR.
_____
JAMES BARRETT WILSON, JR.
NC State Bar 18752
411 Waughtown Street
Winston-Salem, NC 27127
Phone: 336-773-0059
Fax: 336-773-0061
Email: james@jbwilsonlaw.com
*Attorney for Plaintiffs*