IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN PATELLA, a sole proprietor doing business as "LittleJohn's" and doing business as "Platinum;" TERRY SMITH KING, a sole proprietor doing business as "Roosters;" and JONATHAN MAURICE BROWN, a sole proprietor doing business as "Big Time Barbershop; on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:20-cv-433 |
| PEOPLE'S REPUBLIC OF CHINA; THE COMMUNIST PARTY OF CHINA; and WUHAN INSTITUTE OF VIROLOGY, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTIONS
FOR ALTERNATIVE MEANS OF SERVICE AND
FOR SERVICE THROUGH DIPLOMATIC CHANNELS**
(*Rule 4, Federal Rules of Civil Procedure*)

**STATEMENT OF THE CASE**

Plaintiffs have obtained a complete and accurate translation into simplified Chinese of all documents required for service upon Defendants under The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which entered into force in the United States in 1964.

Plaintiffs submit to the court that clearing this translation hurdle was a long and arduous task. Without edits or modifications, the transcription alone cost $3,500.00, somewhat more than was originally projected. However, cost alone was not the most serious obstacle to complying with the terms of The Hague Convention. It proved to be difficult to find an individual who was qualified to translate the documents required for effective service into simplified Chinese and who was also
Page **1** of **13**

willing to sign a verification attesting to the accuracy of the translation. Plaintiffs' attorneys contacted numerous professionals, such as doctors, lawyers, and university professors, all of whom had the knowledge and ability to perform the required translation. However, none of these professionals were willing to do so because they stated that they had families in China and that they were afraid because of the likelihood of reprisals and repercussions for their family members who still lived in China if they were to perform the translation and sign their name to the verification. Plaintiffs sought assistance from Wake Forest University, other institutions of higher education, medical centers, and the business community.

Ultimately, a qualified translator was located in Taiwan who was willing to perform the translation and to execute the necessary verification. The translator employed by Plaintiffs has put themselves, as well as their family, at serious risk for retaliation if China's aggressive conduct toward Taiwan culminates in seizing the island by force. China has consistently demonstrated that families of diplomats, businessmen, and students who are living abroad will be held accountable for the conduct and speech of such individuals. Through public pronouncements, diplomatic communications, and aggressive conduct toward other countries, China has demonstrated that it considers itself the sole arbiter of what its responsibilities as a country entail. China has made it abundantly clear that it does not and will not conform to international norms of conduct whether they pertain to the use of force, recognition of the sovereignty of other states, or customary commercial behavior. International law, as embodied in The Hague Convention and other recognized treaties and precedents, has established a comprehensive body of expectations and requirements concerning the behavior of a countries in their relationships with other countries. China has elected to ignore the tenets of The Hague Convention, as well as those of numerous other agreements, is a well-coordinated and comprehensive effort to shield itself from being held accountable for its conduct on

the international stage.  For example, while Taiwan has existed as a sovereign and self-governing entity since 1949, China has begun to engage in a continued pattern of commercial and military harassment designed to gain control over the island and its people by the deliberate application of diplomatic, economic, and military force without regard to the expressed desire of the Taiwanese people that they live in peace and harmony as an independent state.

China has consciously and purposefully arrogated unto itself the authority to deny and ignore the customary dictates of international law, including the fundamental expectation that sovereign states will cooperate with one another and that disputes will be resolved by negotiation and resort to established institutions of adjudication. China's consistent response to the multitude of claims and questions concerning the origins of COVID-19 has been to deflect questions and to mislead scientific inquiries conducted by respected and neutral organizations.

Plaintiffs have retained the services of Crowe Foreign Services of Portland, Oregon, for the purpose of effecting service of process upon Defendants Communist Party of China and Wuhan Institute of Virology in accord with the provisions of The Hague Convention and the requirements of Title 28 of the United States Code.  Crowe Foreign Services has substantial experience in serving legal documents in multiple foreign countries, including the People's Republic of China.  Crowe Foreign Services is presently ready, willing, and able to effect proper service of process upon Defendants Communist Party of China and Wuhan Institute of Virology in accord with the Hague Convention and Title 28 of the United States Code through electronic mail directed at publicly available electronic addresses for the two Defendants upon entry of an Order from this court authorizing alternative service of process through electronic mail using publicly available and valid email addresses used by such Defendants.

As of the filing date of this motion, Plaintiffs have spent the following amounts in order to comply with the Hague Convention and serve the Defendants, including the Peoples Republic of China:

A. Translation: $3,500.00

B. Service (Crowe): $2,500.00

C. State Dept: $2,725.00

  **Total:** **$8,725.00**

Plaintiffs submit that the foregoing issues regarding obtaining a translation of the Complaint, and of effecting service of process with reasonable dispatch and without delay, would not have arisen if the Defendants were any other Hague Convention signatory or nation. In particular, Plaintiffs are informed that the People's Republic of China, its agencies, and the Chinese Communist Party are engaging in a systematic and ongoing effort to evade and obstructively shield themselves and the Co-Defendants, from service of process in accordance with The Hague Convention in order to prevent the adjudication and consideration of lawful remedies on behalf of those who have alleged damages.

Crowe Foreign Services, which has considerable experience in effecting service under the Hague Convention, attempted to serve all three defendants in a manner consistent with the Hague Convention, but all three defendants refused to accept service without explanation or justification of any kind. Plaintiffs state, upon information and belief, that Defendants are in actual possession of all translated documents, including the summons and Complaint.

The United States District Court for the Eastern District of Missouri has previously entered an order granting the relief which Plaintiffs seek herein, and such court ultimately entered a default judgment against Defendants after having authorized alternative service of process through

electronic mail using publicly available and valid email addresses used by Defendants Communist Party of China and Wuhan Institute of Virology. *State of Missouri, ex rel. Bailey v. The People's Republic of China* (1:20-CV-00099 SNLJ).

Plaintiffs respectfully pray that the court enter an order directing Plaintiffs to effect service of process herein upon Defendants Communist Party of China and Wuhan Institute of Virology through electronic mail using publicly available and valid email addresses used by such Defendants, as well as entry of an order directing the Clerk of the United States District Court for the Middle District of North Carolina to effect service of process herein upon Defendant Peoples Republic of China via diplomatic channels utilizing the offices of the United States Department of State.

## **DISCUSSION OF LAW**

For defendants that are foreign governments or their political subdivisions, where a "special arrangement for service" does not exist, 28 U.S.C. § 1608(a)(2) provides that "service in the courts of the United States … shall be made upon a foreign state or political subdivision of a foreign state … by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). Likewise, for non-governmental defendants located overseas, Federal Rule of Civil Procedure 4(f)(1) provides that "an individual … not within any judicial district of the United States" may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Thus, service through China's central authority under the Hague Convention was the appropriate first channel to attempt service of

process.

Accordingly, after filing the Complaint, Plaintiffs initiated the process of seeking to effect service on all Defendants as authorized under the Hague Convention. Plaintiffs conducted a competitive selection process to procure the services of a professional outside vendor with expertise in investigation, translation, and service of documents abroad, including in China. As a result of this process, Plaintiffs retained the services of a professional international process server for the investigation, translation, and service of process. On Plaintiffs' behalf, that process server investigated official service addresses for all Defendants. Ultimately, however, Plaintiffs' attempts to effect service of process through Crowe Foreign Services failed because none of the Defendants would accept service of process, and China's central authority denied that it was obligated in any manner to receive such process.

The Article 13 objection of China's central authority demonstrates that Plaintiffs' good- faith attempt to effect service pursuant to ordinary Hague Convention channels is futile. Accordingly, the law of the United States authorizes Plaintiffs to pursue alternative methods to perfect service. *See, e.g., Missouri ex. rel Schmitt v. People's Republic of China,* 2021 WL 1889857 (E.D. Mo. 2021); *Zhang v. Baidu.com*, 932 F. Supp. 2d 561, 563 (S.D.N.Y. 2013) ("*Baidu I*") (authorizing a motion for alternative methods of service after China objected under Article 13 of the Hague Convention); *Zhang v. Baidu.com*, 293 F.R.D. 508, 510 (S.D.N.Y. 2013) ("*Baidu II*") (granting the motion for alternative methods of service after China objected to service under Article 13 of the Hague Convention). Specifically, Plaintiffs request that this Court authorize alternative methods of service under Rule 4(f)(3) and 28 U.S.C. § 1608(a)(4).

Rule 4(h)(2) of the Federal Rules of Civil Procedure addresses the service of non-governmental entities located abroad, and it provides that a "foreign corporation, or a partnership or other unincorporated association … must be served: (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under Rule (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f) governs the service upon defendants who are not located "within any judicial district of the United States." Fed. R. Civ. P. 4(f). Rule 4(f) authorizes three coequal, alternative methods of service on non- governmental entities located abroad. Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Plaintiffs timely sought to effect service under Rule 4(f)(1); however, after Plaintiffs submitted its documents for service, Plaintiffs received notice that China's central authority had objected to service under Article 13 of the Hague Convention. Notwithstanding China's Article 13 objection, this Court may still authorize an alternative method of service under Rule 4(f)(3), because China's objection under Article 13 does not foreclose alternative methods of service under Rule 4(f)(3).

"A refusal to effect service under Article 13 of the Convention does not indicate that other 'means' are 'prohibited'—it indicates only that service through the Central Authority is not an option." *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 514 (S.D.N.Y. 2013). Once a court decides to authorize an alternative method of service under Rule

4(f)(3), "[t]he only remaining question is what method of alternative service would be appropriate." *Id.* at 514. The Court thus turns to Rule 4(f)(3), and the "only remaining question is what method of alternative service would be appropriate." *Id.* "A method of alternate service is acceptable if it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Id.* "For a method of service to satisfy due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id*. (*quoting Luessenhop v. Clinton County, New York*, 466 F.3d 259, 269 (2d Cir.2006)). "A district court is afforded wide discretion in ordering service of process under Rule 4(f)(3)." *Id.*

Any argument that "Article 13 refusal precludes alternative service is based on an erroneous understanding of the Hague Convention, which was not intended to be the exclusive means of service on a foreign defendant, but rather a set of procedures, exclusive or not, for serving a defendant by transmitting judicial documents abroad. The purpose of the Hague Convention is to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time. As the Supreme Court has stated, "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 707 (1988). "The Convention has 'no further implications,' therefore, 'where service on a domestic agent is valid and complete under both state law and the Due Process Clause.'" *Id.* at 707.

Plaintiff requests authority to serve the non-government defendants, Communist Party of China and Wuhan Institute for Virology, by emailing them copies of the translated

service packets—which include summons, complaint, and civil cover sheet—to publicly available email addresses for those defendants. Email addresses are publicly available for both defendants and are posted on websites maintained by those organizations. China has objected to service by mail under Article 10 of the Hague Convention. Ample authority holds that an objection to service by postal channels under Article 10 does not foreclose service by email as an alternative method of service under Rule 4(f)(3). *See, e.g., Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.,* 168 F. Supp. 3d 1, 17 (D.D.C. 2016) ("[A] country's objection to Article 10 does not constitute an express rejection of service by email."); *Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (holding that China's Article 10 objection "does not cover service by email"); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC,* 295 F.R.D. 259, 262 (S.D. Ohio 2013) ("Email service has been approved even where, as here, the country objects to Article 10 of the Hague Convention.") (collecting cases); *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.,* Case No. 18-cv-00297-BAS-BGS, 2019 WL 246562, at *2 (S.D. Cal. Jan. 17, 2019) (finding that China's Article 10 objection does not include email and allowing email service under Federal Rule of Civil Procedure 4(f) because it is not "prohibited by international agreement"); *WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co.,* 2019 WL 8810350 (N.D. Cal. Jan. 10, 2019) ("Given the weight of authority [in the Northern District of California], the court finds that China's objection to Article 10 regarding postal service does not mean that email service is 'prohibited by international agreement' under Federal Rule 4(f)."); *FKA Distrib. Co. v. Yisi Tech. Co.*, 2017 WL 4129538 (E.D. Mich. Sept. 19, 2017) (noting that "several courts have held that the Hague Convention allows service by email"); *WhosHere, Inc. v. Orun*, 2014 WL 670817 (E.D. Va.

Feb. 20, 2014) (permitting email service because an Article 10 objection "is specifically limited to enumerated means of service in Article 10," and email is "not explicitly listed as means of service under Article 10"); *SEC v. China Sky One Med., Inc.,* 2013 WL 12314508 (C.D. Cal. Aug. 20, 2013) ("The better argument is that e-mail is sufficiently distinct from postal channels that the two should not be equated under the Hague Convention. Therefore, China's objection to the means of service specified in Article 10 does not prevent service by e-mail.").

Plaintiff has provided the Court with sufficient information from which this Court can be sure the requested email service is reasonably calculated to reach the subject defendants and provide actual notice under the Due Process Clause. The defendants have email addresses identified on their own websites. Service by email to those publicly displayed email addresses "reasonably calculated ... to apprise [defendants] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Email service of process upon non-governmental Chinese entities was specifically approved by the United States District Court for the Eastern District of Missouri in *Missouri ex. rel Schmitt v. People's Republic of China,* 2021 WL 1889857 (E.D. Mo. 2021).

As for the People's Republic of China, Plaintiffs request that service be effected through diplomatic channels. under 28 U.S.C. § 1608(a)(4). Section 1608(a) provides,

> Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
>
> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons

and complaint in accordance with an applicable international convention on service of judicial documents; or

      (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

      (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

Plaintiffs contends they are left with service by way of subsection (a)(4) because "no special arrangement exists" (subsection (a)(1)), service by way of the Hague Convention has proven futile (subsection (a)(2)), and the United States Department of State advises that if the foreign state formally objected to service by mail, then "service under Section 1608(a)(3) should not be attempted, and the plaintiff should proceed to service under Section 1608(a)(4)." U.S. Department of State –Bureau of Consular Affairs, International Judicial Assistance, Service of Process, Foreign Sovereign Immunities Act, at https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Foreign-Sovereign-Immunities-Act.html

The United States Department of State requires, under 22 C.F.R. §§ 93.1 and 93.2, that it will not undertake service upon a foreign nation without authorization from the court in which the action is pending. This authorization is a regulatory prerequisite for obtaining the assistance of the Department of State in an action such as the case at bar. This diplomatic service is not precluded by the Foreign Sovereign Immunities Act. 28 U.S.C. § 1602 *et. seq.*, does not preclude

diplomatic service of process, nor does it bar the Department of State from providing this procedural accommodation to American citizens. FISA merely speaks to the subject matter jurisdiction of a United States District Court; it does not address in any manner the reach of Rule 4 of the Federal Rules of Civil Procedure, nor does it restrict the discretion of a court in fashioning a remedy for service of process upon a recalcitrant party that comports with fundamental fairness and due process. Indeed, the Eastern District of Missouri has reached the same conclusion in *Schmidt,* and it has entered a multi-billion-dollar default judgment against the Defendants.

Plaintiffs respectfully submit that all documents for service upon the non-governmental Defendants have been translated and are readily available for electronic transmission. As for the People's Republic of China, all required documents have been translated, and notices of suit under Section 1608 (a)(4) can be prepared without undue delay.

## CONCLUSION OF LAW

Sufficient grounds exist in fact and in law to justify entry of an order (1) permitting Plaintiffs to serve process upon the Chinese Communist Party and the Wuhan Institute of Virology via electronic mail through use of email addresses identified on such Defendants' public websites; and (2) directing the Clerk of the United States District Court for the Middle District of North Carolina coordinate with Plaintiffs' counsel and international process server to receive and submit Plaintiffs' service packet to the United States Department of State for service of process upon the People's Republic of China.

Respectfully submitted, this 10th day of March 2026.

/s/ JAMES BARRETT WILSON, JR.

---

JAMES BARRETT WILSON, JR.
NC State Bar 18752
411 Waughtown Street
Winston-Salem, NC 27127
Phone:  336-773-0059; Fax:     336-773-0061
Email:   james@jbwilsonlaw.com
*Attorney for Plaintiffs*

## CERTIFICATE OF WORD COUNT

I certify that this Brief complies with the word count limit set forth in L.R. 7.3(d). This Brief contains 6,250 words or less, exclusive of the caption, signature lines, certificate of service, and any cover page or index, according to the word count feature of the word processing software used to prepare the Brief.

Respectfully submitted, this 10th day of March 2026.

/s/ JAMES BARRETT WILSON, JR.

---

JAMES BARRETT WILSON, JR.
NC State Bar 18752
411 Waughtown Street
Winston-Salem, NC 27127
Phone:  336-773-0059; Fax:     336-773-0061
Email:   james@jbwilsonlaw.com
*Attorney for Plaintiffs*